IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

IN RE:    HARRY IRWIN BUTLER SR and
CLARA DELL BUTLER, Debtors           No. 6:08-bk-73338
                                      Ch. 13

MEMORANDUM OPINION AND ORDER

Before the Court is the Objection to Confirmation filed by Ford Motor Credit Company LLC [FMC] on October 1, 2008. The gravamen of the creditor's objection is that upon confirmation, the payments to FMC would cease for approximately seven months while the trustee is paying the administrative costs and attorney fees under the plan. The Court heard the objection on January 21, 2009, and at the conclusion of the hearing took the objection under advisement. For the reasons stated below, FMC's objection to confirmation is sustained.

## Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

## Background

The debtors filed their Chapter 13 Narrative Statement of Plan on August 22, 2008, in which they proposed to pay $185.00 per month to the trustee for 60 months. The plan proposed to pay FMC $116.00 per month for a vehicle with a listed value of $5700.00, but did not provide for any adequate protection payments to be paid to FMC. The proposed plan also included administrative costs for an attorney fee "to be paid $1000 from funds paid in by the debtor, after administrative costs have been paid, and the

remaining fee at the rate of 25% of the total disbursed to creditors each month thereafter until paid in full.**$3,000**" The initial $1000.00 payment to the attorney is referred to as a "kicker fee." FMC objected to the proposed plan. Prior to the hearing, on December 30, 2008, the debtors filed a Modification of Chapter 13 Plan, in which the debtors proposed to pay FMC adequate protection payments in the amount of $116.00 per month beginning 30 days after the date of filing and continuing until confirmation of the debtors' plan. The next day, the Court entered its Agreed Order Granting Adequate Protection Payment reflecting the terms provided for in the modified plan. The remaining unresolved objection for hearing was that,

> [t]he plan is not feasible, in that the proposed plan payments to the trustee are insufficient to allow the trustee to make distributions to Creditor in equal monthly installments sufficient to provide Creditor adequate protection during the plan. The initial payment (kicker fee) paid to debtors' attorney at confirmation may cause an interruption in Creditor's disbursements.

**Stipulations**

Prior to the hearing, the parties entered into the following stipulations of facts:

1. On or about July 28, 2004, Debtors purchased from Riser Ford in Hot Springs, Arkansas pursuant to a Retail Installment Contract ("the Contract") a 2004 Ford Taurus, bearing VIN #**1FAFP55U74A117465** ("the Vehicle"). For valuable consideration and in the ordinary course of business, Ford Credit purchased the Contract in good faith from the dealership without notice of any claim or defense to it, and by proper assignment, became the holder thereof. A true and correct copy of page one of the Contract is attached hereto, made a part hereof, and marked as Exhibit "A".

2. The payment of the obligation under the contract is secured by a purchase money security interest in the Vehicle and the security interest was perfected under Arkansas law. A true and correct copy of the Arkansas Certificate of Title for the Vehicle noting Ford Credit's lien thereon is attached hereto, made a part hereof, and marked as Exhibit "B".

3. Specific material terms of the Contract, which is secured by the Vehicle, included that Debtors financed a balance of $22,182.00 at an annual

2

percentage rate of 2.90%, over a term of 72 months, with monthly installment payments of $336.03 commencing on August 27, 2004.

4. On or about August 22, 2008, Debtors filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code.

5. On or about October 1, 2008, Ford Credit filed its proof of claim herein asserting a secured claim in the amount of $7,829.49, based upon Debtors' debt to Creditor. A true and correct copy of said proof of claim is attached hereto, made a part hereof and marked as Exhibit "C".

6. Debtors have used the Vehicle daily since the filing of their Ch. 13 petition and intend to use it daily during the remaining period of the Chapter 13 plan. Creditor has not accepted the plan, and the debtors have not surrendered the collateral.

7. On August 22, 2008, Debtors filed a Plan proposing a plan payment to the Chapter 13 Trustee of $185.00 per month. The original Plan also stated the debt at $7814.00, valued the Vehicle at $5700.00, and proposed to pay that debt amount with 8% interest at $116.00 per month. The parties have agreed to resolve the value dispute contained in the objection by Debtors modifying the value to be at $7250 at 9%, with specific monthly payments of $150.50. The original Plan did not propose pre-confirmation adequate protection payments to the Creditor, but an Agreed Order and modification later resulted in FMCC receiving pre-confirmation adequate protection payments. A true and correct copy of the original Plan is attached hereto, made a part hereof, and marked as Exhibit "D".

8. On October 1, 2008, Ford Credit filed its objection to confirmation of the original plan. The objection was based on the assertions that the plan does not propose to make distributions to Creditor in equal monthly installments in an amount sufficient to provide Creditor adequate protection pre-confirmation (this pre-confirmation issue has now been resolved); that the plan was not feasible as the proposed plan payments to the trustee were insufficient to allow the trustee to make distributions to Ford Credit in equal monthly installments sufficient to provide adequate protection during the plan (post confirmation); and that the initial payment (kicker fee) paid to debtors' attorney at confirmation may cause an interruption in Creditor's disbursements. Creditor also objected that the debtor will not be able to make all payments under the plan, or otherwise comply with the plan, (these issues have been resolved). Finally, the plan does not specify when the lien will be released, though the debtor is willing to modify to include this language in the modification referenced above.

9. Solely for the purposes of pre-confirmation adequate protection monthly payment determination, the parties agree that $116.00 is acceptable. Solely for the purposes of this case, the parties stipulate that a 9% rate of interest agreed upon by the parties is acceptable.

10. Upon confirmation of the plan, Debtors and Ford Credit project that the Chapter 13 Trustee intends to make the following disbursements, assuming there are sufficient funds on hand to do so: first, administrative costs for Trustee's fees and expenses; second, Debtors' attorney will receive $1,050.00, (commonly referred to as the "kicker fee"). Additionally, Debtor's attorney will receive 25% of the total monthly plan disbursement to creditors, up to the court-approved $3,050 attorney's fees. Finally, after Debtor's attorney receives $1050.00 for his kicker fee, Ford Credit will begin receiving its specified monthly payment in the amount of $116.00 per month[1] (again, assuming there are sufficient funds on hand to do so).

11. If the Plan were confirmed on the scheduled hearing date for Ford Credit's objection to confirmation (January 21, 2009), and assuming Debtors make all of their plan payments in full to the Trustee from this date forward, the post-confirmation disbursements to Ford Credit for its secured claim are projected to be as follows:

| Month | Amount |
|---|---|
| Jan. 2009 | $0.00 |
| Feb. 2009 | $0.00 |
| Mar. 2009 | $0.00 |
| April 2009 | $0.00 |
| May 2009 | $0.00 |
| June 2009 | $0.00 |
| July 2009 | $0.00 |
| August | $ should be received |

12. If Debtor fails to pay the Trustee one or more future plan payments in full, then the post-confirmation disbursements to Ford Credit for its secured claim are projected to be less than the amounts set forth in the preceding paragraph.

---

[1] Although this stipulation contemplates a payment of $116.00 per month after the payment of the "kicker fee," according to ¶ 7 of the stipulations, the agreed monthly payment is $150.50.

4

**Discussion**

The issue before the Court concerns the conflict between the code requirement of equal monthly payments to secured creditors under the plan pursuant to § 1325(a)(5)(B)(iii) and the plan provision that allows the trustee to pay a "kicker fee" to the attorney before making any payments to the secured creditor. According to the stipulations of the parties, this practice of paying the kicker fee first would result in FMC not receiving *any* payments for approximately seven months once the plan is confirmed. Although it seems a simple issue to state, resolution requires a close look at four code provisions.[2]

Section 309 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 [BAPCPA] amended the key code provisions related to the issue before the Court. Specifically, § 1325(a)(5)(B) was amended to provide equal monthly payments to secured creditors under a plan, and § 1326(a) was amended to provide adequate protection directly to a secured creditor not later than 30 days after the order for relief. These code sections, which are relevant to this Court's decision, must be read together:

> **11 U.S.C. § 1325.  Confirmation of plan.**
>
> (a) Except as provided in subsection (b), the court shall confirm a plan if--
> . . .
>> (5) with respect to each allowed secured claim provided for by the plan--
>> . . .
>>> (B)(iii) if--
>>>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>>>> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan.

---

[2] The specific code sections are § 1325(a)(5)(B)(iii); § 1326(a)(1); § 1326(a)(2); and § 1326(b), set forth in relevant part below.

> **11 U.S.C. § 1326.  Payments**
>
> (a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount--
> > (A) proposed by the plan to the trustee;
> > (B) . . .
> > (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.
>
> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation.  If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. . . .
> . . .
> (b) Before or at the time of each payment to creditors under the plan, there shall be paid--
> > (1) any unpaid claim of the kind specified in section 507(a)(2) of this title;
> > (2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28; . . .

### Adequate Protection

A debtor is required to make payments beginning not later than 30 days after the order for relief in an amount proposed by the debtor's plan.  11 U.S.C. § 1326(a)(1).  Included in this amount are payments that provide adequate protection to creditors holding allowed claims secured by personal property.  Adequate protection is compensation paid to the creditor for the depreciation of its collateral.  *United States Assoc. of Tex. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 370 (1988) ("interest is not adequately protected if the security is depreciating during the term of the stay").  According to the code, unless otherwise ordered by the court, payments related to the lease of personal property and that provide adequate protection to a secured creditor are to be made directly to the holder of such claims.  11 U.S.C. § 1326(a)(1)(B), (C).  The balance of the required

payment is to be paid to the trustee. However, in Arkansas, in accordance with General Order 32, all payments under this section are required to be made directly to the trustee prior to confirmation. The trustee then makes the adequate protection payments to secured creditors that have filed a proof of claim.[3]

Congress added § 1326(a)(1)(C) to the code under BAPCPA. Before the enactment of BAPCPA, some courts held that adequate protection payments ended upon confirmation of a plan, presumably because a confirmed plan would satisfy any requirement of adequate protection to the creditor. *In re Cason*, 190 B.R. 917, 928 (Bankr. N.D. Ala. 1995); *In re Johnson*, 63 B.R. 550, 553-54 (Bankr. D. Colo. 1986). If the creditor was not adequately protected, it could object to confirmation of the plan or obtain relief from stay and acquire its collateral. Now, because there is a specific code provision requiring a debtor to pay adequate protection payments beginning within 30 days after the order for relief, creditors holding allowed claims secured by personal property are protected if their

---

[3] General Order 32 of the United States Bankruptcy Court for the Eastern and Western District of Arkansas states, in relevant part to this opinion:

> 1. <u>Adequate Protection Payments</u>. All adequate protection payments which shall become payable on or after October 17, 2005, pursuant to the requirements of 11 U.S.C. § 1326(a)(1)(B) and (C), shall be paid as follows:
> . . .
> b) If the Chapter 13 Plan provides for a § 1326(a)(1)(C) preconfirmation adequate protection payment to a creditor holding an allowed claim secured by personal property to the extent that the claim is attributable to the purchase of such property by the Debtor for that portion of the obligation that becomes due after the order for relief is entered, said payment shall be paid through the Chapter 13 Trustee and not directly to the creditor. If no adequate payment is designated in the proposed plan, the payment amount shall be the amount of the proposed plan payment to said secured creditor.
> . . .
> d) The Chapter 13 Trustee shall distribute pre-confirmation adequate protection payments to any creditor identified by the Debtor's Plan and for which a proof of claim has been filed, as soon as practicable after receipt of said payment from the Debtor.

collateral is depreciating, regardless of any proposed plan provision or payment scheme. In other words, adequate protection is required before *and* after confirmation of the debtor's plan.

Even after the enactment of BAPCPA, under § 1325(a)(1) a plan must still comply with the provisions of chapter 13 in order to be confirmed. As stated, one of the "new" requirements under chapter 13 is the specific requirement that a debtor pay to a secured creditor adequate protection beginning not later than 30 days after the order for relief. 11 U.S.C. § 1326(a)(1)(C). To meet this requirement, some courts allow a debtor's plan to provide for the payment of adequate protection after confirmation until the payments provided for in the plan begin. *See, e.g., In re Hill*, 397 B.R. 259 (Bankr. M.D.N.C. 2007); *In re DeSardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006).[4] Other courts look to another "new" requirement--equal monthly amounts for periodic payments--to ensure that payments in an amount sufficient to provide adequate protection are made beginning with the debtor's first payment after confirmation. *See, e.g., In re Sanchez*, 384 B.R. 574, 579 (Bankr. D. Or. 2008) (stating that "during the period of the plan" under § 1325(a)(5)(B)(iii)(II) means that equal monthly payments to secured creditors must start with first payment after confirmation); *Royals v. Massey* (*In re Denton*), 370 B.R. 441, 446 (Bankr. S.D. Ga. 2007). It is this requirement of equal monthly payments that causes the most disagreement between courts, and upon which FMC's objection is based.

### Equal Monthly Payments

The code provision providing for the requirement for equal monthly payments states:

> (a) Except as provided in subsection (b), the court shall confirm a plan if--
> . . .
> (5) with respect to each allowed secured claim provided for by the plan--

---

[4] In Arkansas, pursuant to General Order 32, if the plan does not provide for an amount of adequate protection, the amount is deemed to be the amount of the proposed plan payment to the secured creditor, without regard to whether the payment is made before or after confirmation.

> . . .
> (B)(iii) if--
>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan.

11 U.S.C. § 1325(a)(5)(B)(iii). In interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). When read together, § 1325(a)(5)(B)(iii)(I) and (II) merely requires the debtor to propose a plan that provides for payments to secured creditors to be made monthly, in equal amounts. *Hill*, 397 B.R. at 268; *but see In re Marks*, 394 B.R. 198, 205 (Bankr. N.D. Ill. 2008) (stating that debtor is required to make equal monthly payments to the plan, rather than merely propose a plan that provides for equal monthly payments to secured creditors). Further, if the creditor's claim is secured by personal property, the proposed payment to the creditor cannot be less than the amount required to provide adequate protection to that creditor. *Hill*, 397 B.R. at 268. The purpose of the second part of this provision is to make sure that creditors whose claims are secured by personal property remain adequately protected during the period of the plan or until the creditor's claim is paid in full. For example, if adequate protection is determined to be $200.00 per month and the balance of the debt is $2000.00, the debtor cannot confirm a plan unless he proposes to pay that creditor at least $200.00 per month.[5] The debtor is precluded from proposing a payment of less than $200.00 per month over a longer period of time.

The purpose of the new provisions of BAPCPA relating to equal monthly payments was to restrict the types of payments that debtors had previously proposed to secured creditors

---

[5] Unless, of course, the creditor otherwise accepts the plan under § 1325(a)(5)(A).

9

with depreciating collateral. *Daimlerchrysler Fin. Servs. Am., LLC v. Rivera* (*In re Rivera*), No. 1:08-CV-21-TS, 2008 WL 1957896, at *3 (N.D. Ind. May 2, 2008). For instance, some debtors attempted to "backload" plans by proposing plans that call for a secured creditor to receive a large balloon payment at the end of the plan, or that provided for graduated or step-up payments during the life of the plan. *In re Erwin*, 376 B.R. 897, 901 (Bankr. C.D. Ill. 2007). Other examples include debtors not providing for equal monthly payments, such as reduced payments during certain months of the year, or payments that are made quarterly or semi-annually. *Id.* The requirement of equal monthly payments whenever periodic payments are due eliminates this concern.

Although courts may agree about the general purpose behind § 1325(a)(5)(B)(iii)(I) and (II), the concept of periodic payments in relation to equal monthly amounts has resulted, basically, in two lines of cases. The first line of cases find that "periodic payments . . . in equal monthly amounts" refer to *all* payments made on allowed secured claims after confirmation, and those payments must begin with the trustee's first distribution under a confirmed plan. *See, e.g., Denton*, 370 B.R. at 446; *see also In re Espinoza*, No. 08-20778, 2008 WL 2954282 (Bankr. D. Utah Aug. 1, 2008); *Wells Fargo Fin. Georgia, Inc. v. Baxter* (*In re Williams*), 385 B.R. 468 (Bankr. S.D. Ga. 2008); *Sanchez*, 384 B.R. at 578. These courts conclude that equal monthly payments must begin with confirmation and continue until the secured claim is paid in full. *Denton*, 370 B.R. at 443. According to these courts, the periodic payments contemplated under the code refer to all "regularly-recurring post-confirmation payments on an allowed secured claim." *Id.* at 446. Because the code states that the periodic payments shall be in equal monthly amounts, the courts conclude that all periodic payments after confirmation must be in equal monthly amounts. *Id.*

The second line of cases find the equal monthly payment provision requires payments to be equal *once they begin* and to continue to be equal until the claim is paid in full. There is no requirement in the code that the payments begin with the first payment after confirmation. *See, e.g., DeSardi*, 340 B.R. at 805*; see also Marks*, 394 B.R. at 204; *Hill*,

397 B.R. at 268-69; 8 Collier on Bankruptcy ¶ 1325.06[3][b][ii][A], p. 1325-27 (15th ed. rev'd 2008). This provision was explained by the *DeSardi* court:

> The equal payment provision does not state that its requirements must be met beginning in month one of the plan. Nor does the section state that payments must be equal "as of the effective date of the plan." In contrast, the immediately preceding section of § 1325(a)(5)(B)(ii) does use such language. That section states that "Except as provided in subsection (b) the court shall confirm a plan if . . . with respect to each allowed secured claim provided for by the plan . . . the plan provides that . . . the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . . ." 11 U.S.C. § 1325(a)(5)(B)(ii). While perfectly aware of its drafting options, Congress wrote "[I]f . . . property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts[.]" 11 U.S.C. § 1325(a)(5)(B)(iii)(I). Most importantly, subsection 1325(a)(5)(B)(iii)(II) explicitly requires that payments be not less than the amount to provide adequate protection "during the period of the plan." No similar language exists in subsection (I). The Court understands this clause to require payments to be equal once they begin, and to continue to be equal until they cease.

*DeSardi*, 340 B.R. at 805. This Court believes that the reasoning behind the second line of cases as stated by the *DeSardi* court more accurately describes the proper interpretation of this code provision, especially considering the requirement of adequate protection and the trustee's duties described below.

### Confirmation

According to the code, after a plan is confirmed, the trustee shall distribute *as soon as practicable* the payments made by the debtor to the trustee pursuant to § 1326(a)(1). 11 U.S.C. § 1326(a)(2). The timing and the amount of payments to specific creditors is determined by the trustee in accordance with the bankruptcy code. *Erwin*, 376 B.R. at 902. However, the trustee is not bound by the equal payment provision of § 1325(a)(5)(B)(iii). Sections 1322 and 1325 concern the contents of a plan and what a *debtor* must do to have a plan confirmed. *Id.* The debtor is required to propose a plan that provides for equal monthly payments to secured creditors. The directives relating to the trustee's administration of the debtor's confirmed plan are contained in § 1326 and

11

are few, indicating "an intent to repose broad discretion in trustees for the administration of plans." *Id.* Part of this code driven discretion concerns the timing of when the equal monthly payments to secured creditors would begin. And that determination must take into account another trustee requirement under § 1326:

> Before or at the time of each payment to creditors under the plan, there shall be paid--
> (1) any unpaid claim of the kind specified in section 507(a)(2) of this title;
> (2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28.

11 U.S.C. § 1326(b). The trustee must make payments as soon as practicable after confirmation, but either before or at the same time of each payment, the trustee must pay certain administrative claims.

### Payments of Administrative Claims

Upon confirmation, the code requires the trustee to pay unpaid claims for administrative expenses allowed under § 507(a)(2), which refers to § 503(b), and the trustee's percentage fee. 11 U.S.C. § 1326(b). Section 503(b) includes compensation awarded under § 330(a), which includes allowed attorney fees in a chapter 13 case. These payments must be made either before or at the same time as payments to creditors under the plan. Some courts, and a leading bankruptcy treatise, hold that the requirement to pay any unpaid claim means that the administrative claims must be paid in full before any creditors receive payment. *See, e.g., Shorb v. Bishop* (*In re Bishop*), 101 B.R. 185, 186 (B.A.P. 9th Cir. 1989) (quoting S. Rep. No. 95-989, at 142, 95th Cong. (2d Sess. 1978), which states: "accrued costs of administrative and filing fees, as well as fees due to the Chapter 13 Trustee, to be disbursed before payments to the creditors under the plan."); *DeSardi*, 340 B.R. at 808 (finding that "unpaid claim" is not a reference to a partial payment); *In re Harris*, 304 B.R. 751, 757 (Bankr. E.D. Mich. 2004) ("no payment may be made to any other creditor under the plan *unless* the unpaid administrative expense is paid *in full*, either first or at the same time"); 8 Collier on Bankruptcy ¶ 1326.03[1], p. 1326-16 (15th ed. rev'd 2007) ("Section 1326(b)(1) requires the disbursing agent . . . to

12

pay in full all unpaid priority administrative claims . . . either before or with each distribution to creditors under the plan."). Presumably, for these courts, the use of the word "or" in the phrase "before *or* at the time of each payment to creditors under the plan" does not allow flexibility in the payment of administrative claims at confirmation. Rather, it is to allow the payment of administrative claims that arise after confirmation and *ongoing* trustee percentage fees concurrent with the ongoing distributions to creditors.

Other courts find that the statute permits a court the option of "ordering complete payment of allowed administrative expense claims in front of other creditors, or ordering their payment 'at the time of' payment to other creditors." *In re Balderas*, 328 B.R. 707, 717 (Bankr W.D. Tex. 2005); *see also In re Pappas & Rose, P.C.*, 229 B.R. 815, 820 (Bankr W.D. Okla. 1998) (recognizing payments to attorneys may be made concurrently with payments to creditors). These courts recognize that while administrative fees cannot be deferred, they do not have to be paid in full prior to the distributions to creditors under the plan. This would allow a plan to be confirmed, for instance, that proposes to pay the attorney fee over a one year period, rather than having to pay the fee in full prior to the payment of other creditors. This interpretation of § 1326(b) would allow attorneys to continue to offer their services to debtors with the debtors continuing to pay little or no money to the attorneys prior to filing, while still allowing creditors to begin receiving payments concurrent with the payment of attorney fees over time. It is also in agreement with the current procedure used by the chapter 13 trustees in Arkansas.[6]

---

[6] According to the Arkansas chapter 13 trustees' published Guidelines For Compensation For Services Rendered And Reimbursement of Expenses in Chapter 13 Cases, attorneys are paid summary compensation awards (sometimes referenced as "no look fees") as follows:

> 4. Upon confirmation, the Chapter 13 Trustee shall pay the summary compensation award from funds paid by the debtor(s):
>    i. As follows:
>       a. An initial portion of the summary compensation award in an amount not to exceed $800 [the kicker fee], after first

13

The requirement to pay administrative fees--either in full before or concurrent with payments to creditors--when read in conjunction with the requirement to make adequate protection payments within 30 days of filing, dictate that equal monthly payments may not necessarily occur until some time after confirmation.  For instance, in the case before the Court, the debtors have proposed a monthly payment of $185.00.  If the adequate protection payment after confirmation remains $116.00, the same amount as preconfirmation adequate protection payments, then after the adequate protection payment is made, $69.00 would remain.[7]  If the adequate protection payment continues to be made through the trustee's office (as is required for preconfirmation payments under General Order 32), the current trustee fee of 5% would have to be deducted ($5.80), leaving $63.20 to pay the remaining administrative fees, which include the attorney "kicker fee."  In this case, the kicker fee is $1000.[8]  This is the amount that would need to be paid before any payments were made to creditors under the plan.  At $63.20 per month, the kicker fee would be paid in approximately 18 months, at which time the regular monthly payments to the creditors could begin.  In the mean time, payment for the depreciation of the creditor's property is provided by the adequate protection payments that are required by the code.  The Court finds that this is the proper application of § 1326(b) with regard to the timing of the trustee's requirement to pay certain administrative claims before or at the time of payments to creditors.

---

paying administrative costs, including applicable Trustee's fees and administrative fees; and
b. *Thereafter, the remaining summary compensation award shall be paid at the rate of ten percent (10%) from the total amount disbursed to creditors each month.*

[7] As stated, this calculation assumes that the adequate protection payment would remain $116.00 after confirmation.  Because no adequate protection payments were proposed in the debtors' plan after confirmation, in accordance with General Order 32 the payments would actually be $150.50, the amount of the proposed plan payment.

[8] Neither FMC or the trustee objected to the amount of the kicker fee, even though the trustee's guidelines suggest an amount "not to exceed $800."

14

Considering the Court's finding that adequate protection payments continue until the trustee is able to make the proposed plan payments, the priority of adequate protection payments in relation to administrative expenses must be addressed. At least one court has found that the payment of adequate protection payments after confirmation is in the nature of an administrative expense under § 503(b)(1). *See DeSardi*, 340 B.R. at 799 (finding that "actual, necessary costs and expenses of preserving the estate" under § 503(b)(1) includes adequate protection payments). If adequate protection payments are necessary costs of preserving the estate under § 503(b)(1), and § 507(a)(2) refers to "administrative expenses allowed under section 503(b)," then the § 503(b)(1) administrative claims would have priority over the § 503(b)(2) administrative claims, which include the attorney fees. In that instance, the adequate protection payments would be paid prior to the remaining administrative fees.

While in agreement with the ultimate holding of the *DeSardi* court, another court disagreed with the finding that adequate protection payments were administrative priority claims. It recognized that if the debtor retains the creditor's personal property collateral, the debtor must pay adequate protection because it is a requirement of § 1326(a)(1)(C) and § 1325(a)(5)(B)(iii). *Hill*, 397 B.R. at 271. According to the *Hill* court, after confirmation, but before the equal monthly payments begin, the § 507(a)(2) claims can be paid *after* the adequate protection payments. *Id.* Adequate protection is a code requirement under § 1326(b)(1) that the debtor is directed to pay; it is not a priority claim. As stated earlier, it is compensation paid to the creditor for the depreciation of its collateral. As such, adequate protection payments must begin within 30 days of filing the petition, and must continue until the trustee has funds available to pay the equal monthly payments proposed in the debtor's plan. If the adequate protection payments are paid to the trustee after confirmation (as is required for preconfirmation payments in Arkansas), then the trustee shall pay adequate protection payments prior to any unpaid claim of the kind specified in § 507(a)(2) and the percentage fee fixed for the chapter 13 trustee.

**Conclusion**

Reading the sections together, the Court finds that in order for a plan to be confirmed, the plan must include certain provisions and adhere to the strictures of the code. First, pursuant to § 1326(a)(1)(C), the debtor must pay adequate protection to a creditor holding an allowed secured claim secured by personal property beginning 30 days from the order for relief. Second, the debtor must propose a plan that provides for equal monthly payments to that secured creditor. Those proposed plan payments cannot be less than an amount sufficient to provide adequate protection to the creditor during the period of the plan. Third, pursuant to § 1326(b), upon confirmation of the plan the trustee must pay administrative claims and the trustee's percentage fee before or at the same time as each payment to creditors under the plan. However, confirmation of a plan does not obviate the requirement for adequate protection. If adequate protection payments are made through the trustee's office, the adequate protection payments must be paid prior to any unpaid claim of the kind specified in § 507(a)(2) and the percentage fee fixed for the chapter 13 trustee. As soon as the administrative fees are paid (including the "kicker" fee), the trustee shall begin paying the equal monthly payments proposed in plan.

Following these guidelines, the plan before the Court cannot be confirmed because the plan, as presented, is not feasible. Because the plan does not propose an adequate protection payment after confirmation, according to General Order 32 the adequate protection payment would be the amount of the proposed plan payment--$150.50. After the adequate protection payment is made, $26.97 remains to pay the administrative claims and trustee's percentage fee.[9] At the conclusion of the debtors' plan, FMC would have been paid in full pursuant to the parties' stipulation, and the attorney's fee would

---

[9] This calculation, and the next one, assumes that the adequate protection payments would continue to be made through the trustee's office. Accordingly, the trustee's percentage fee would also be disbursed, which amounts to 5% of the adequate protection payment ($7.53 in this example). If the adequate protection payment were paid directly to the creditor, $34.50 would remain to pay the administrative claims and trustee's percentage fee. This does not change the Court's conclusion that the plan is not feasible.

16

have been paid in the amount of $1537.20. Because the plan proposes to pay the attorney a total of $3050.00, the plan is not feasible.

Even if the plan provided for the stipulated adequate protection payments of $116.00 to continue after confirmation, the plan is still not feasible. After the adequate protection payment is made and the trustee's percentage fee is disbursed, $63.20 remains to pay the administrative claims and trustee's percentage fee. The proposed kicker fee of $1000.00 would be paid in full by the trustee after the debtor had made approximately 18 plan payments to the trustee. At that time the equal monthly payments proposed to FMC would begin. At the conclusion of the debtors' plan, FMC will not have been paid its stipulated debt in full and only $2126.04 of the attorney's fee will have been paid.

Under either scenario, the plan proposed by the debtors' is not feasible and cannot be confirmed. Accordingly, FMC's objection to confirmation is sustained. The debtors shall have 30 days from the entry of this order to propose a plan that conforms to the requirements set forth in this order.

IT IS SO ORDERED.

March 16, 2009
DATE

BEN T. BARRY
UNITED STATES BANKRUPTCY JUDGE

cc: James C. Hunt, attorney for the debtor
Louis Whitaker Light, attorney for the creditor
Jack W. Gooding, chapter 13 trustee

EOD 3/17/2009
by L Schacherbauer